IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND, SOUTHWEST AREAS HEALTH AND WELFARE FUND; AND CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS PENSION FUND | ) ) ) ) ) ) | 10 C 6207 |
| Plaintiffs/Counter-Defendnats, | ) ) ) | |
| v. | ) ) | |
| HEALTH CARE, PROFESSIONAL, TECHNICAL, OFFICE, WAREHOUSE AND MAIL ORDER EMPLOYEES UNION LOCAL 743 | ) ) ) ) ) | Hon. Charles R. Norgle |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Central States, Southeast and Southwest Areas Health and Welfare Fund; and Central States Southeast and Southwest Areas Pension Fund (collectively, "Central States") sues Health Care, Professional, Technical, Office, Warehouse and Mail Order Employees Union Local 743 ("Local 743") seeking to vacate an arbitrator's award. Local 743 counterclaims to enforce the arbitrator's award against Central States. Cross-motions for summary judgment are briefed and before the court. For the reasons discussed below, summary judgment is entered in favor of Local 743 and the arbitrator's award shall be enforced.

# I. INTRODUCTION

## A. Facts[1]

The court limits its factual review to the parties' Local Rule 56.1 statements and any properly referenced attached exhibits, including the Arbitrator's Opinion and Award (the "Award"). See Koszola v. Bd. of Educ. of Chi., 385 F.3d 1104, 1109 (7th Cir. 2004) (district court has discretion on summary judgment to limit factual review to parties' Local Rule 56.1 statements).

A Central States employee since 1982, Sue Hanson-Motley ("Hansen-Motley") worked as a claims adjuster in fall 2006 when she took a new job with similar duties and greater responsibility. Although not initially covered by a collective bargaining contract, Central States and Local 743 included Hansen-Motley's new job, as an employee claims adjuster (the "Job"), in the agreement of April 1, 2007 to March 31, 2012 (the "CBA").

The CBA provides for arbitration "[i]n order to provide an orderly method of handling/disposing of all disputes, misunderstandings, differences, or grievances" between Central States and Local 743 members "as to the meaning, interpretation, and application of the provisions" of the CBA. CBA § 13.1. Elsewhere, the CBA provides for a job evaluation committee (the "JEC") made up of three members apiece from Central States and Local 743. Id. § 13.4. The six-member JEC "shall meet to discuss the unit placement wage rates and changes in job content for any jobs which come into existence after the execution of" the CBA. Id. The CBA does not create rules of JEC procedure, but the parties agree a three-to-three tie vote means no change.

---

[1] The court takes the factual background from the parties' statements of uncontested material facts pursuant to Local Rule 56.1. Other sources are appropriately cited.

From the time she took the job in 2006, Hansen-Motley lobbied for a wage review. In accepting the Job, Hansen-Motley had taken a pay cut, but expected that pursuant to the terms of the CBA her pay would be restored. She was unable to get a review through informal requests. Not until she filed a grievance in January 2009 did the JEC agree to review her wage.

The JEC found that Hansen-Motley was entitled to a wage increase of ten percent. The JEC also gave her a new title. The JEC did not, however, award her pay retroactive to April 2007. In fact, the JEC did not formally reach the issue. Nor, according to Central States, did the JEC entertain the grievance itself. Although it has no official rules, the JEC, according to Central States, officially entertains only written submissions for a review, not grievances. Hansen-Motley's grievance, which triggered the JEC meeting in May 2009 to review the Job, stated in relevant part:

> [The] position of employee claims adjuster was "created" by the Human Resources Department in Sept. 2006, never evaluated for job duties or wage compensation. In June, 2008, the job classification was signed into the contract retro to 4-1-2007 again with no evaluation or proper wage consideration. Settlement: to be made whole and for all lost wages.

Award 8.

The JEC did, however, *discuss* the retroactive pay issue at the same May 2009 meeting where it voted to give Hansen-Motley a wage increase and new title. Rather than vote on the matter, a Central States member asked for more information on the issue. The backpay matter was tabled. Later, the three Central States members signaled informally that they would block any retroactive pay. The union recognized the futility, and no formal vote was held. Hansen-Motley took the backpay issue to arbitration June 23, 2010, before Arbitrator Matthew W. Finkin (the "Arbitrator").

## B. Procedural History

The Arbitrator's Award granted Hansen-Motley backpay to April 2007, the time of "her inclusion in the bargaining unit." The Award stated: "The Grievance is sustained. The Grievant will be made whole in the amount of $12,089,83." The Award was issued September 28, 2010. Central States filed suit to vacate the Award the same day. Local 743 counterclaimed to enforce the Award on October 20, 2010. The parties' cross-motions for summary judgment are briefed and before the court.

## II. DISCUSSION

### A. Standard of Decision

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There are no material facts in dispute. Both parties move for summary judgment on the issue of whether the Arbitrator in issuing the Award interpreted the CBA or instead relied on a "his own brand of industrial justice." United Food & Commercial Workers, Local 1546 v. Ill.-Am. Water Co., 569 F.3d 750, 755 (7th Cir. 2009) (quoting United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)).

"When parties seek judicial review of an arbitrator's award, the role of the courts, both district and appellate, is extremely limited." Id. at 754. A court will enforce an award that "draws its essence from the contract." Id. (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36, 38 (1987)). An award "draws its essence" from the contract if it is based on the arbitrator's interpretation of the agreement, right or

4

wrong, id. (citation omitted), or if it "has a plausible foundation in the terms of the agreement," Clear Channel Outdoor, Inc. v. Int'l Unions of Painters & Allied Trades, Local 770, 558 F.3d 670, 675 (7th Cir. 2009); see also Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) ("[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." (quotations omitted)). To conclude the arbitrator interpreted the contract is to conclude the review. United Food & Commercial Workers, Local 1546, 569 F.3d at 754; see also Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment v. Union Pac. R.R. Co., 522 F.3d 746, 757 (7th Cir. 2008) ("[T]he question before a federal court is not whether the . . . arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." (quotations omitted)).

"It is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract ... that the award can be said not to draw its essence from the [parties' agreement]." Id. at 755 (citation and quotations omitted). "In such cases, the Supreme Court has said that the arbitrator is 'dispens[ing] his own brand of industrial justice.'" Id. (quoting Enter. Wheel & Car Corp., 363 U.S. at 597). The court does not, however, review the merits of the Arbitrator's decision. Clear Channel Outdoor, Inc., 558 F.3d at 675. The court reviews only whether the Arbitrator exceed the power delegated to him by the parties. Id. The arbitrator will not have exceed that power if the decision is "animated by the collective

5

bargaining agreement." Id. (citation omitted). Put another way, an award may be overturned only when an arbitrator must have based his award on something other than the agreement such that there is no possible interpretive route to the award. See id.

## B. Cross Motions for Summary Judgment

The parties agreed the issue before the Arbitrator was "[w]hether the Grievant was improperly denied back pay from April, 2007, to May, 2009, for the job she was given in October, 2006." In his opinion, the Arbitrator considered two CBA provisions relevant, Section 13.4, which created the JEC, and Section 13.3, which defined an arbitrator's power under the CBA. The latter provides:

> The arbitrator agreed upon by the parties may consider only the issue or issues presented in the grievance, and the decision must be based solely on the application of the provisions of this Agreement. The arbitrator shall not amend, add to, or subtract from the Agreement provisions in reach his decision.

Award 2. As a jurisdictional matter, Central States argued a backpay award was an interest arbitration, not a rights arbitration as contemplated by Section 13.1, and so not properly before the Arbitrator. The arbitrator disagreed and reached the merits of the dispute. On the merits, the Arbitrator reasoned that because the JEC recognized Hansen-Motley's right to a pay increase for the Job, included in the CBA more than two years earlier, Hansen-Motley should, in the absence of any countervailing rationale from the JEC, be awarded pay retroactive to April 2007.

### *1. The Arbitrator Had Jurisdiction*

Central States contends that under the terms of the CBA, making a decision on awarding backpay was not something the JEC was required to do. The Arbitrator, as Central States reads his opinion, found that the JEC was required to make a decision on

backpay, one way or the other. Such a finding may be to add a term to the CBA, which could exceed the power granted in Section 13.3. This, however, is only Central States's interpretation of the Arbitrator's opinion. Moreover, it does not clearly exclude Hansen-Motley's grievance from the Arbitrator's jurisdiction. The broad definition of matters subject to arbitration under Section 13.1 covers her grievance for disputed "lost wages." Nor does Section 13.4 create exclusive jurisdiction for the JEC to determine matters of wages for jobs such as hers. In fact, Section 13.4 merely requires the JEC to "discuss" matters of wages. As Central States notes, a duty to "discuss" falls short of a duty even to negotiate, much less a duty to render a decision.

The arbitrator found that absent express CBA language reserving exclusive jurisdiction in such matters to the JEC, contractual silence would not suffice to create exclusive jurisdiction. The court agrees. Indeed, had the Arbitrator found exclusive JEC jurisdiction exists, such finding would likely have exceeded his authority. This is particularly so where such jurisdiction would grant Central States's three JEC members the plenary power to table a wage review indefinitely without recourse for the employee seeking review. The court finds the Arbitrator had jurisdiction to hear the arbitration.

### 2. *The Arbitrator Interpreted the Contract*

The Arbitrator found that a decision on retroactive pay, in this case and others, was expressly contemplated by the JEC. The JEC was created by the CBA in Section 13.4. Because the JEC never decided the backpay issue, the grievance arrived at arbitration without a record. The Arbitrator heard testimony from witnesses and the parties filed briefs. As an initial matter, he found that because the CBA entitles a

7

grievant to a decision on the merits through arbitration, he had jurisdiction to apply the CBA to the merits of the backpay portion of the grievance.

The Arbitrator acknowledged that other matters had already been decided. On the portion of Hansen-Motley's grievance concerning a wage increase, the JEC had rendered a decision, granting her a higher rate of pay. The JEC had also decided the Job became effective years earlier and was governed by the CBA. Based on these findings by the JEC, the Arbitrator found an award of backpay was a logical consequence. The Arbitrator concluded it was "simply a case of an employee not being paid at the rate the employer later agreed should be paid for the job." Award 2.

In meeting Central States's arguments, the Arbitrator interpreted the CBA at every turn. Central States argued first that Section 13.4 of the CBA did not give the JEC the power to render a decision under the CBA. The Arbitrator reasoned that "[e]ven if, by close reading of the text, that body lacked jurisdiction, the Employer, by agreeing to submit the dispute to it, knowingly and voluntarily" waived that argument. It is evident the Arbitrator interpreted the CBA to reach this conclusion. His conclusion here has "a plausible foundation" in the CBA. Clear Channel Outdoor, Inc., 558 F.3d at 675.

Second, Central States argued the JEC created a new job, not just a new title, and with it a new wage which, under federal labor law, was not subject to a retroactive award. The Arbitrator instead found that the Job was not a new job, but rather the same one Hansen-Motley took in fall 2006, and so a backpay award was not ruled out. Third, Central States argued that because the JEC's handful of retroactive pay awards in the past rarely if ever exceeded thirty days, this created a mutually understood practice. The Arbitrator found as a fact that, to the contrary, the evidence was insufficient to establish

8

such a practice. The parties do not dispute that factual findings are within the power the CBA grants an Arbitrator to address the "issues presented in the grievance." CBA § 13.3.

Fourth, Central States argued the issue of backpay was an interest, not a right under the CBA. The Arbitrator expressly discussed the difference between rights and interest arbitration. He applied this distinction to the CBA. He reasoned that because the JEC agreed Hansen-Motley deserved a ten percent raise for a job covered by the CBA retroactive to 2007, and otherwise refused to explain the denial of backpay, "the award of pay as per the Employer's agreement on the contractual rate for the period of contractual coverage speaks the contract, it does not make a new one." The court finds the Arbitrator is obviously interpreting the CBA to reach his decision. His rationale is not mere "lip service." Arch of Ill. v. District 12, United Mine Workers of Am., 85 F.3d 1289, 1293 (7th Cir. 1996). His interpretive route to the Award is clear. See id.

Finally, Central States argued that, as previously noted in this opinion, Section 13.4's silence created exclusive jurisdiction for the JEC on wage reviews. The Arbitrator reasoned that, "[t]o be sure, a collective agreement may well reserve such power, but it would need to say as much. Such power cannot be reserved merely by contractual silence and nothing in § 13.4 or in § 6 on Management Rights denies reviewability." The Arbitrator's application of common interpretive techniques regarding a contract's silence is another example of the Arbitrator's interpretation of the CBA.

Central States makes two additional arguments. First, it asserts that the Arbitrator based his award on a finding of a violation of Section 13.4 of the CBA because the JEC failed to render a formal decision on backpay. This was improper, Central States contends, because Section 13.4 requires no such thing, and such a finding presumes the

9

Arbitrator added a requirement to the CBA and in so doing exceeded his power. Second, Central States casts the Arbitrator's discussion of the interest-rights divide as a finding that the Arbitrator was himself engaging in interest arbitration.

Central States's arguments suggest ambiguity in the opinion. "However, a mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." Arch of Ill., 85 F.3d at 1292-93. To warrant overturning an award, "the opinion must unambiguously reflect that the arbitrator based his decision on noncontractual grounds." Id. at 1293. Indeed, Central States "must do more than merely show that its interpretation of the opinion is reasonable; it must demonstrate that the opinion cannot be interpreted any other way." Id. Central States has not done so. The Arbitrator did not explicitly base the Award on a violation of Section 13.4, see id., and there is no merit to Central States's contention that his discussion of the interest-rights arbitration divide somehow abrogates his power. Central States's interpretations are strained at best. The court cannot say the "opinion cannot be interpreted any other way." Id.

The Arbitrator recognized it was possible that a matter could arise before the JEC, such as whether to create a new job classification, that would require interest arbitration. But this was not such a matter. The Arbitrator explained that this was a matter of an employer failing to pay an employee what was owed. "Management's refusal to pay her at that rate for that period of time is the substance of her grievance. No reason appears why she should not be awarded that rate of pay for that period of time." Award 12.

The Arbitrator did not apply his "own sense of equity." Arch of Ill., 85 F.3d at 1292. Instead, he acted within the power granted by the parties; his decision is "animated

by" the CBA. Clear Channel Outdoor, Inc., 558 F.3d at 675. For the court to enforce the Award, the Arbitrator must only have interpreted the CBA—not interpreted it correctly or even interpreted it reasonably, but merely have interpreted it. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, 522 F.3d at 757. To conclude that the Arbitrator interpreted the CBA, as the court does, is to conclude the review. See United Food & Commercial Workers, Local 1546, 569 F.3d at 754. The Award shall be enforced against Central States.

### III. CONCLUSION

For the forgoing reasons, the court finds the Arbitrator's decision draws its essence from the CBA and is not his own brand of industrial justice. Summary judgment is granted in favor of Local 743 and denied as to Central States. The Arbitrator's Award shall be enforced against Central States.

IT IS SO ORDERED.

ENTER:

8/5/11

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: